```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division


MICHAEL SHELTON,                  )
                                  )
       Plaintiff,                 )
                                  )
            v.                    )     1:06cv141 (JCC)
                                  )
LOCKHEED MARTIN OPERATIONS        )
SUPPORT, INC., and LOCKHEED       )
MARTIN SERVICES, INC.,            )
                                  )
       Defendant.                 )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' motion for summary judgment. For the following reasons, this Court will grant Defendants' motion for summary judgment in full.

### I. Background

From January 2001 to September 2004, Plaintiff, an African-American male, was employed by Defendant Lockheed Martin Operations Support, Inc. (LMOS) on contract with the United States Army's Information Technology Agency ("ITA program"), which provides data network services for the Department of Defense. Plaintiff worked at Defendants' offices in the Pentagon in Arlington, Virginia, where the contract was managed.

In February 2004, Defendants hired Mr. Doug Steelman as the Deputy Director of Security on the ITA program, who served as Plaintiff's supervisor from February 2004 until Plaintiff's

termination in September 2004.  Several years prior, in 2001, an alleged altercation occurred between Steelman and Plaintiff while Steelman was employed by one of Defendants' subcontractors on the ITA Program.  Specifically, Plaintiff alleges that Mr. Steelman "elbowed" him.  Although far from material, there is a factual dispute as to whether this elbowing was intentional or by accident.

On April 20, 2004, three years after this incident, Plaintiff complained about Steelman in an email to Deputy Program Manager DeEtte Gray ("Gray"), Manager of Human Resources Bill Muth ("Muth"), and Director and Program Manager Ron Stefano ("Stefano").  Plaintiff notified these individuals that he had filed an assault charge against Steelman for the alleged altercation.

In early May 2004, Gray asked Plaintiff to meet with her and Steelman on May 7, 2004 to discuss the performance review and evaluation process.  On the morning of May 7, 2004, Plaintiff sent an email to Gray stating that he would attend the meeting at the scheduled time, but out of concerns for his safety, he had contacted the Pentagon Police to ensure that an officer will be present.  Plaintiff, at approximately 6'2" to 6'3" and 220 pounds, claimed that he was afraid to meet with Steelman, at approximately 5'6" and 180 pounds, without the presence of a

police officer. Gray did not read the email prior to the meeting.

Before the meeting began, the Pentagon Police arrived at the scheduled location, which consisted of cubicle divider panels approximately five feet tall. The police were visibly present to other employees while Ms. Gray, unaware of who had summoned the police, proceeded with the meeting. Upon discovering that Plaintiff was responsible for the police presence, Gray informed him that this was unacceptable behavior and should not happen again.

On May 12, 2004, Plaintiff filed a claim for discrimination and retaliation by Defendants with the United States Equal Employment Opportunity Commission ("EEOC"). Lockheed Martin received a copy of Plaintiff's claims on June 8, 2004.

On September 3, 2004, Steelman scheduled another meeting with Plaintiff for September 14, 2004 for his Mid-Year Review. On the same day, Plaintiff sent an email to Mr. Muth questioning why he was being reviewed and reiterating concerns for his safety from Mr. Steelman.

On September 8, 2004, Steelman informed Plaintiff that he had failed to update his "performance objectives" despite being asked four times over the preceding months and that such objectives will be created for him. (Def.'s Ex. 26). Plaintiff

rejected the objectives created by Steelman and further stated that he would be on vacation on September 14, 2006--the date for which the mid-year review was scheduled. The meeting was rescheduled for September 16 to accommodate Plaintiff's vacation.

On September 9, 2004, Plaintiff emailed Muth requesting the presence of a Pentagon Police escort for his mid-year review. Muth replied that a guard would be unnecessary because four other people would be present to ensure the meeting proceeded. On September 15, Plaintiff told Muth that he was not comfortable and did not feel safe with the people selected to attend this Mid-Year review. He further told Muth that he was requesting a guard for protection from Steelman at the meeting. (Def.'s Ex. 29). Muth again informed Plaintiff that it would not be necessary to have a guard present at the review.

On September 16, Plaintiff appeared outside the conference room for the meeting, but told Ms. Markonette Richardson (from Human Resources) that he was waiting for Pentagon Police to arrive. Ms. Richardson again informed Plaintiff that such was not necessary or appropriate, and eventually told Plaintiff that the meeting was cancelled and would be rescheduled.

In a September 20 email to Mr. Muth, Plaintiff stated that he felt that "the PPD [Pentagon Police Department] should be present" and he would request their presence again if the meeting

is rescheduled. (Def.'s Ex. 27). On September 22, Mr. Muth gave Plaintiff a "Final Written Warning" which provided:

> [At the scheduled September 16th meeting] you refused to enter the conference room to attend an interim PRS review meeting, citing concerns for your physical safety. There is no basis for believing that your physical safety will in any way be threatened at this required meeting. Therefore, there is not justification for your demand to have a guard present at the meeting. This refusal is a violation of Lockheed Martin's policy number SGP-504 entitled, "Company Rules of Conduct" in that you refused to carry out a reasonable order from a management representative. This constitutes insubordination. You further demonstrated improper conduct by stating you would refuse to attend similar meetings scheduled in the future unless there was a guard present. This type of employee behavior cannot be condoned or accepted under any circumstances. Therefore, you are being given this Final Written Warning to formerly inform you that this type of conduct will no longer be tolerated. Be advised that if there is any recurrence of this type of behavior in the future, you will be subject to further disciplinary action up to and including termination.

(Def.'s Ex. 4).

Defendants rescheduled the performance meeting for Friday morning on September 24, 2004. That morning, Mr. Stefano was advised that Plaintiff had arranged for the Pentagon Police to attend, and that the meeting had been cancelled for the third time. In accordance with the Final Written Warning, Mr. Stefano terminated Plaintiff's employment for insubordination in violation of Lockheed Martin's Code of Conduct. Plaintiff was

given a written letter notifying him of this decision later that day by Mr. Muth.

On July 5, 2005, Plaintiff received a letter from the EEOC dismissing the charge against Lockheed Martin. Specifically, the EEOC found insufficient evidence to support the claim that Plaintiff was subjected to discrimination or retaliation and that he was ultimately terminated based upon the manner in which his evaluation would take place. (Def.'s Ex. 20). Moreover, the EEOC found that, even with further investigation, the Commission would not be able to substantiate his allegations. *Id.*

On February 8, 2006, Plaintiff filed a Second Amended Complaint in this Court alleging two counts of discrimination (Counts I and II) and two counts of retaliation (Counts III and IV) in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. Defendants have moved for summary judgment on all counts. These motions are currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations

omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

### III. Analysis

Defendants move for summary judgment as to Counts I and II (alleging discrimination) and Counts III and IV (alleging retaliation). For the following reasons, the Court will grant Defendants' motion for summary judgment in full.

#### A.  Discrimination under § 1981 and Title VII (Counts I-II)

Plaintiff does not oppose Defendants' motion for summary judgment as to the discrimination claims (Counts I and II) and conceded at oral argument that he has no viable discrimination claim. Accordingly, this Court will grant summary judgment as to Counts I and II.

### B. **Retaliation under § 1981 and Title VII (Counts III-IV)**

Next, this Court will consider Defendants' motion for summary judgment as to Plaintiff's claims of retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. The process for litigating retaliation claims is well established. Since there is rarely direct evidence of retaliation, the Supreme Court has provided the burden-shifting *McDonnell Douglas* framework when the claim is based upon circumstantial evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-805 (1973). Under that framework, to avert summary judgment, the plaintiff must first establish a *prima facie* case of retaliation. 411 U.S. at 802. Once the plaintiff has satisfied the requirements of a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Williams v. Staples, Inc.* 372 F.3d 662, 667 (4th Cir. 2004). If the defendant shows a legitimate, non-discriminatory reason for its actions, the burden then shifts back to the plaintiff to come forward with sufficient evidence that a jury could reasonably find that the defendant's asserted reasons are a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804. It is under this framework that this Court evaluates Plaintiff's claims of retaliation.

<u>A.   Whether Plaintiff has established a *prima facie* case</u>

To establish a *prima facie* case of retaliation, Plaintiff must produce evidence from which a reasonable jury could find (1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action.  *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004)(retaliation under § 1981); *Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)(retaliation under Title VII).  The plaintiff's burden in attempting to establish a *prima facie* case of retaliation is not an onerous one.  *Evans v. Davie Truckers, Inc.* 769 F.2d 1012 (4th Cir. 1985)(citations omitted).

The first two elements of the *prima facie* case are undisputed in this case, as neither side contests that (1) Plaintiff engaged in the protected activity of filing an EEOC claim and (2) Defendants took an adverse employment action against him by termination.  Thus, the first two elements for a *prima facie* case of retaliation are satisfied, and this Court now must analyze whether a causal connection existed between the EEOC claim and the termination.

"A causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of

-9-

the protected activity." *Price v. Thompson*, 380 F.3d 209, 219 (4th Cir. 2004). Where a plaintiff relies on temporal proximity alone to establish causality, such proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(citations omitted). In the instant case, Plaintiff provides no other evidence that a causal connection exists between the two events other than temporal proximity, and therefore, this Court must determine whether that alone is "close" enough to establish a causal connection.

       The Fourth Circuit has held that a causal connection is not established by a three to four month gap separating the protected activity and the adverse action. *Shield v. Fed. Express Corp.,* 120 Fed. Appx. 956, 963 (4th Cir. 2005). In this case, the evidence is undisputed that Plaintiff filed his EEOC claim on May 12, 2004 and that Defendants received this claim on June 8, 2004. Over three-and-a-half months later, on September 24, Plaintiff was terminated. This Court finds that, consistent with Fourth Circuit precedent, this time period is too long to establish a causal connection by temporal proximity alone.[1] Accordingly, Plaintiff fails to establish a *prima facie* case of

---

[1] *See also King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)(holding that a lapse of two months between the protected activity and the adverse action is "sufficiently long so as to weaken significantly the inference of causation."); *Pascaul v. Lowe's Home Ctrs., Inc.,* 98 Fair Empl. Prac. Cas.(BNA) 1779, 2006 U.S. App. LEXIS 19760 (4th Cir. 2006)(finding "three to four months . . . is too long to establish a causal connection").

retaliation and summary judgment is appropriate as to Counts III and IV.

### B.  Even if a *prima facie* case could be established, summary judgment would still be appropriate.

Assuming *arguendo* that the time period alone is sufficient to demonstrate causality, this Court would still grant Defendants' motion for summary judgment.  Defendants have articulated the legitimate, non-discriminatory business reason of insubordination of the Plaintiff--specifically, the refusal to attend a simple performance review without bringing a police officer.  In response, Plaintiff has not demonstrated by which a reasonable trier-of-fact could find this reason pretextual.

Plaintiff's insubordination for which he was fired is summarized as follows:  Plaintiff attended the May 7 meeting accompanied by a police officer, citing unreasonable concerns for his safety.  On September 16, after being asked and directed not to bring a guard or police officer, Plaintiff again arranged for a police officer to attend the mid-year review and refused to attend without police presence.  That meeting was cancelled, and rescheduled, and Plaintiff was given a "Final Written Warning" on September 22 that such behavior is insubordination and recurrence could result in termination.  Inevitably, on September 24, Plaintiff defied management yet again and arranged for a police officer to attend his rescheduled mid-year review.  Plaintiff was terminated soon thereafter.

To counter these facts, Plaintiff has provided no credible evidence that his termination was in retaliation for his EEOC filing and not for his defiance and insubordination.  There is no genuine dispute as to the material facts that: (1) Plaintiff was in no physical danger at his mid-year review, (2) Plaintiff's insistence on police presence at these meetings was wholly unreasonable, and (3) management was completely justified in firing Plaintiff for his repeated insubordination.  Therefore, even if Plaintiff could establish a *prima facie* case, this Court would still grant summary judgment since no reasonable trier-of-fact could find that Defendants retaliated against Plaintiff in violation of 42 U.S.C. § 1981 or Title VII.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in full.

An appropriate Order will issue.


November 17, 2006                    _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                            UNITED STATES DISTRICT COURT JUDGE